**IN THE COURT OF APPEALS OF IOWA**

No. 23-1102
Filed January 24, 2024

**IN THE MATTER OF THE GUARDIANSHIP OF A.K. and J.K.,**

**B.M. and J.M.,**
        Appellants.
_____

        Appeal from the Iowa District Court for Benton County, Cynthia Finley, District Associate Judge.

        Guardians appeal the termination of voluntary guardianships after the withdrawal of parental consent. **AFFIRMED.**

        Alexander S. Momany of Howes Law Firm, P.C., Cedar Rapids, for appellants.

        Robert W. Davison, Cedar Rapids, for appellee.

        Robin O'Brien Licht, Cedar Rapids, attorney for minor children.

        Considered by Bower, C.J., and Buller and Langholz, JJ.

**LANGHOLZ, Judge.**

An aunt and uncle were appointed guardians for their two nieces with the consent of girls' parents in July 2020. The girls' mother later withdrew her consent and asked to terminate the guardianships after making many changes to her life, including successfully caring for a new child. In July 2023, the district court agreed with the mother and terminated the guardianships. The court reasoned that the guardians had failed to meet their burden to prove that terminating the guardianships would cause rigorous harm to the girls.

The guardians now appeal, mainly arguing that the district court applied the wrong legal standard. According to them, the court should have first conducted a factual inquiry whether the mother had shown a lack of parental participation, and if so, put the burden on the mother to show termination of the guardianships was in the girls' best interests. They also argue that termination would not be in the girls' best interests and that, even under the rigorous-harm standard applied by the court, the evidence showed that termination would cause rigorous harm to the girls.

The guardians provided excellent care for, and established a healthy bond with, the girls during the guardianships. But the district court applied the correct legal standard under the statute and precedent governing termination of voluntary guardianships. And on our de novo review, giving the court's thoughtful factual findings the weight they deserve, we agree that the guardians have not shown by clear and convincing evidence that terminating the guardianships would cause the girls physical harm or significant, long-term emotional harm sufficient to carry their burden under the rigorous-harm standard. We thus affirm.

I.

In May 2020, an aunt and uncle petitioned to establish minor guardianships for their two nieces.[1]  The girls were then two and five.  And they began residing with their aunt and uncle around the same time, after being in the care of their maternal grandmother for at least one year or so before.  The girls' father—who is the step-brother of the uncle—and their mother both consented to the guardianships.  And in July 2020, the juvenile court established the guardianships under Iowa Code section 232D.203—which requires parental consent—and appointed the aunt and uncle as guardians.  *See* Iowa Code § 232D.203(1)(a).

From the start, the mother began raising concerns that the guardians were preventing her from contact with her children.  The guardians' initial proposed care plan provided no proposals for the children to interact with their parents, raising concerns about COVID-19, the parents' homelessness, and their erratic behaviors.  In September 2020, the mother sent a letter to the children's guardian ad litem—which was also filed with the court—asking why she had not been given any time to interact with her children and emphasizing:

> Bottom line is I WANT TO SEE AND VISIT [the girls] . . . what can I do to accomplish this?  You are their attorney please help me.  **NOT GIVING UP MY PARENTAL RIGHTS!!!!**

The court then rejected the care plan because it denied all visitation, communication, and interaction with the parents, and the guardians had not shown that contact with the parents had resulted or would likely result in significant

---

[1] We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's order—is public.  *Compare* Iowa Code § 232.147 (2020), *with id.* §§ 602.4301(2), 602.5110.

physical or emotional harm. *See* Iowa Code § 232D.401(5). The parties eventually reached a temporary agreement on some limited video calls with the children in December 2020.

In February 2021, the mother gave birth to another daughter, who had the same father as the two older girls. By this time the mother had worked to change her previous lifestyle, aptly described by the juvenile court as "tainted with drug usage and domestic violence." She separated from their father, moved into a residential women's services center, participated in counseling and substance-abuse treatment, and obtained full-time employment. Indeed, she had been sober since September 2020. Immediately after the birth, the Department of Human Services conducted a child-abuse assessment and concluded that there were no concerns suggesting that the newborn was a child in need of assistance.

The mother first sought to end the guardianships in March 2021. But the next month the parties reached an agreement that was memorialized in a court order dismissing her request and ordering visitation, including in-person supervised visitation for four hours every two weeks in her home and family therapy on the alternating weeks.

In October 2021, the mother again asked to terminate the guardianships. Litigation continued in the juvenile court over the next twenty-one months. We need not dwell on all its twists and turns and stalls—multiple hearings, postponements, occasional agreements, and changes in various players, including the judge because of recusal. Suffice it to say that the twenty-one-month delay is not fairly attributable to the mother or a sign that she yielded to the continued guardianship. And throughout this time, she was severely limited in her contact

with the two girls by the guardians, often not even able to have the visitation to which she was entitled under the April 2021 order.

At one point, the proceeding was apparently paused to give the Benton County Attorney time to assess whether a child-in-need-of-assistance case was appropriate for any of the mother's daughters—the youngest one in her care or the two under the guardianships. The county attorney declined to bring any case, reporting to the court that there were "no safety concerns" for the youngest daughter in her custody and no legal grounds to start proceedings for any of the children.

The mother finally got a ruling on her request to terminate the guardianships in July 2023. In a thoughtful seventeen-page ruling, the juvenile court considered the well-developed evidentiary record. Backed up by solid reasoning, the court expressly found the mother "credible and not self-serving," and gave "less credibility" to the guardians. And it applied the standard for terminating a voluntary guardianship set forth in Iowa Code section 232D.503(2)—as interpreted just a few months before by our supreme court in *In re Guardianship of L.Y.*, 968 N.W.2d 882 (Iowa 2022)—to the court's detailed factual findings.

The juvenile court reasoned that because the mother had withdrawn her consent to the guardianship, it must be terminated unless the guardians prove that terminating it would result in rigorous harm. The court found that the mother could care for her children—crediting her original decisions to have their grandmother care for them and to consent to the guardianship, her efforts at self-improvement, and her care for her youngest daughter who is not under a guardianship or other supervision. The court expressed some concern about the criminal record of a

new boyfriend with whom the mother was now living. But because she had been doing so safely for more than a year without harming her youngest daughter and he still had custody of his other children, the court found that this also was not clear and convincing evidence of threatened harm. And the court discounted the in-camera testimony of the eight-year-old daughter that she did not feel safe with her mother and did not want her guardianship terminated after finding her "own words show that much of her opinions must have been highly influenced by the guardians—whether this influence was intentional or not."

So the juvenile court found the guardians had not met their burden under section 232D.503(2). The court summarized its core reasoning:

> [T]here is likely trauma in either option—returning the children to [the mother's] care, or remaining in the guardianship. Unfortunately, this trauma will likely be greater now, in 2023, than it would have been in 2021, when [the mother] initially filed to have the guardianship terminated. The Court finds that this trauma, and the interest in the children avoiding this trauma, does not rise to the level of "rigorous harm" sufficiently to overcome [the mother's] fundamental liberty interest in the care, custody, and control of her daughters. She has maintained as much contact with the children as she was allowed in the past three years. She has addressed the issues in her life which [were] the basis for the guardianship being initiated. She has successfully and safely parented [her new daughter] while this process was ongoing. The guardians have not met their burden to rebut the parental preference.

The juvenile court thus terminated the guardianships. The guardians now appeal.

II.

We review a juvenile court's decision whether to terminate a guardianship de novo. *L.Y.*, 968 N.W.2d at 892. While we are not bound by the court's factual findings, we give them weight. *Id.* Giving deference is especially appropriate when the finding is based on a determination of witness credibility. *See* Iowa R. App.

6.904(3)(g).  We do so because unlike the juvenile court, "appellate courts must rely on the printed record in evaluating the evidence" and "are denied the impression created by the demeanor of each and every witness."  *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984).

The court "shall terminate a guardianship established" with parental consent:

> if the court finds that the basis for the guardianship set forth in section 232D.203 is not currently satisfied unless the court finds that the termination of the guardianship would be harmful to the minor and the minor's interest in continuation of the guardianship outweighs the interest of a parent of the minor in the termination of the guardianship.

Iowa Code § 232D.503(2).  Once a parent revokes her consent, the statutory basis for the guardianship no longer exists.  *See L.Y.*, 968 N.W.2d at 894; *see also* Iowa Code § 232D.203(1) (requiring, among other things, any parent with legal custody to "knowingly and voluntarily consent to the guardianship").

So after such a revocation of consent, the court must terminate the guardianship unless it finds that doing so "would be harmful to the minor and the minor's interest in continuation of the guardianship outweighs" the parent's interest in termination.  Iowa Code § 232D.503(2).  In considering this second step of the analysis, "the juvenile court must start with the rebuttable presumption that the child's best interests are served by reuniting the minor child with their parent."  *L.Y.*, 968 N.W.2d at 899–900.  And a guardian seeking to continue the guardianship then "bears the burden of rebutting this presumption by clear and convincing evidence that" termination would result in "a real threat" of "either physical harm or significant, long-term emotional harm."  *L.Y.*, 968 N.W.2d at 900.

The juvenile court applied this rigorous-harm standard here. But the guardians argue that it skipped a preliminary step: deciding whether the mother had shown a lack of parental participation that made the rebuttable presumption inapplicable. If so, they argue, then the mother retained a burden to prove termination is in the children's best interests.

The guardians' argument fails, however, because it runs smack into the text of the statute and our supreme court's interpretation of it. The statute sets up the burden-shifting. *See L.Y.*, 968 N.W.2d at 894. For a voluntary guardianship, once parental consent is revoked, it must be terminated "unless the court finds" the rigorous harm standard satisfied. Iowa Code § 232D.503(2). And the supreme court already decided that this—along with the underlying "constitutional protections afforded parents in the care, custody, and control of their children"—means the burden is on the party seeking to continue the guardianship. *L.Y.*, 968 N.W.2d at 894.

So too did the supreme court already decide that applying the rebuttable presumption and rigorous-harm standard is the correct way to weigh the interests as required by the statute. *See id.* at 898–901. True, the court arrived at this interpretation of the statute mindful of the fundamental constitutional "right of parents to make childrearing decisions," which cannot be infringed by the State "simply because a state judge believes a better decision could be made." *Id.* at 901 (cleaned up). But that does not mean we need to conduct a separate constitutional analysis to decide whether we should start with the rebuttable presumption in every case under this statute. The court in *L.Y.* was ultimately

interpreting a statute. *See id.* at 898–901. It settled the framework required under the statute. And the court's guidance is binding on us and the juvenile court.

The unpublished cases cited by the guardians in support of their theory are not to the contrary. Neither *In re Guardianship of B.B.*, No. 21-0992, 2022 WL 523325 (Iowa Ct. App. Feb. 22, 2022), nor *In re P.S.*, No. 22-0077, 2022 WL 1234120 (Iowa Ct. App. Apr. 27, 2022), involved the termination of a voluntary guardianship under Iowa Code section 232D.503(2). One affirmed establishment of a guardianship without consent where one of the required statutory grounds was "a demonstrated lack of consistent parental participation." *B.B.*, 2022 WL 523325, at *3 (citing Iowa Code § 232D.204(1)). The other affirmed a contested permanency order establishing a guardianship in a child-in-need-of-assistance proceeding under chapter 232, after the child had been removed and adjudicated in need of assistance. *See P.S.*, 2022 WL 1234120, at *1–2. So they do not support adding a new analytical step into a different statute with a different standard. Nor *could* an opinion of our court trump the supreme court's interpretation of the statute here. *See State v. Beck*, 854 N.W.2d 56 (Iowa Ct. App. 2014) ("We are not at liberty to overrule controlling supreme court precedent.").

The juvenile court applied the correct legal standard to evaluate the mother's request to terminate the voluntary guardianships under section 232D.503(2). After finding that she revoked her consent, it started with the rebuttable presumption that the children's best interests are served by reunification with their mother. *See L.Y.*, 968 N.W.2d at 899–900. And then it moved on to consider whether the guardians had proved by clear and convincing evidence that

termination would result in "a real threat" of "physical harm or significant, long-term emotional harm." *Id.* at 900. This was not error.

### III.

We turn then to consider whether the guardians carried their burden of rebutting the presumption in favor of reunification by proving with clear and convincing evidence that termination would result in "a real threat" of "physical harm or significant, long-term emotional harm." *Id.* Unlike a typical child custody dispute between parents, under this "rigorous harm standard," it is not enough "for the guardians to show that they would provide superior care to the child." *Id.* Nor do "economic and cultural advantages in the guardians' home" or "more extracurricular activities" or "a better school district" "tip the balance in their favor." *Id.* at 900–01 *(*cleaned up). And the children's "anxiety over the transition from one home to another does not rise to the level of significant emotional harm" because we recognize that "[n]o matter how cases like this one are resolved, there will likely be anxiety and stress for the child[ren] for a period of time." *Id.* at 901.

But the presumption can be rebutted with evidence of "the parent's present unfitness or past abandonment of the child such that the affections of the child and [guardian] have become so interwoven that to sever them would seriously mar and endanger the future happiness of the child." *Id.* (cleaned up). Still, we must take care not "to focus solely on a parent's failure to discharge the duties of parental care and protection" or to hold the voluntary guardianship against the parent. *Id.* at 900 (cleaned up). We want to encourage—not discourage—parents from seeking to establish a guardianship to obtain temporary relief from "the rigors of

raising a child" when they are "unable to fully discharge the responsibilities of parenthood." *Id.* (cleaned up).

The guardians have not met their heavy burden here. They point to three main threats of significant, long-term emotional harm. First, they contend that placing the children back with their mother will severely disrupt their life and cause enough trauma to be a significant, long-term emotional harm. They assert that the mother's choppy history of caring for and relating with the children will cause extensive emotional harm that is not in the children's best interests.

While there may be difficulty in the children's relocation and adjustment to life with their biological mother, this transitional anxiety "does not rise to the level of significant emotional harm." *L.Y.*, 968 N.W.2d at 901. These concerns come from the pure nature of a change in environment, not the ability of the mother to be a parent. The ending of any guardianship and transplanting of a child back to their parent will generally be difficult and at times tumultuous. But like the district court, we agree that there would likely be continued trauma if the guardianships are continued as well. And we cannot say that the added short-term concerns outweigh the long-term interests in reunification.

The guardians also argue that the mother's limited contact with the children rises to abandonment that should change the calculus and make separation from the guardians a more significant emotional harm. But again, we agree with the district court that these facts do not show the level of abandonment to rebut the parental preference. We do not hold the establishment of the guardianships or her previous reliance on the grandmother for care against the mother. *L.Y.*, 968

N.W.2d at 900. And it would be especially inappropriate to do so where she has been seeking to end the guardianships for almost two years.

Finally, though briefly, the guardians also point to the presence of the mother's new boyfriend, who has a significant criminal history, in their joint home. The juvenile court thoughtfully weighed this factor too, correctly recognizing that this concern is not clear and convincing evidence of any real threat of rigorous harm when he has been safely living with the mother and her youngest daughter for over a year and has not lost his parental rights to his biological children.

The bottom line is that these voluntary guardianships should have terminated once the mother withdrew her consent unless the juvenile court found clear and convincing evidence of rigorous harm. And the court properly made no such finding here. What's more, by the hearing, the mother had been in stable employment, sober, and successfully caring for her youngest daughter—all for at least two years. And all three girls were developing close bonds with each other. Challenges likely lie ahead, as they do for many families. But there is no reason to conclude on this record that the mother cannot rise to meet them.

To be clear, this is not a contest between the merits of the guardians and the mother. Indeed, this case reaffirms that "it is not unusual for Iowa's courts to remove children from conscientious, well-intentioned custodians with a history of providing good care to the children and place them with a natural parent." *L.Y.*, 968 N.W.2d at 895–96 (cleaned up). Still, on our de novo review, giving the juvenile court's factual findings and credibility determinations the weight they deserve, we agree that the court properly terminated the guardianships.

**AFFIRMED.**